UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| ALEWYA ADEM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. |
| | ) |
| QUEEN OF SHEBA LLC and | ) |
| SABA MARCOS, | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

Plaintiff, Alewya Adem, alleges as follows against Defendants, Queen of Sheba LLC and Saba Marcos:

### I. NATURE OF ACTION

1. Plaintiff, an Ethiopian emigrant and United States citizen, brings this civil and labor rights action for compensatory, liquidated, and punitive damages as a result of her subjugation to forced and involuntary labor, wage theft, and denial of workplace benefits in violation of federal and state law.

### II. PARTIES

2. Plaintiff is Alewya Adem ("Plaintiff"). Plaintiff is a resident of Fort Wayne, Indiana.

3. Defendant is Queen of Sheba LLC ("Queen of Sheba"). Defendant Queen of Sheba is a domestic limited liability company based in Fort Wayne, Indiana. Defendant Queen of Sheba is named for the following purposes: Plaintiff's involuntary labor claims under the Trafficking Victims Protection Act, 18 U.S.C. § 1595; Plaintiff's minimum wage, overtime, and wage payment claims under the Indiana Minimum Wage Law, Ind. Code § 22-2-2-9, Indiana Statutory Wage Law, Ind. Code § 22-2-5-2, and Fair Labor Standards

Act, 29 U.S.C. § 216(b); and Plaintiff's worker's compensation retaliation claim, *Tony v. Elkhart Cnty.*, 918 N.E.2d 363, 369-70 (Ind. Ct. App. 2009).

4. Defendant is also Saba Marcos ("Marcos"). Defendant Marcos is owner, operator, and manager of Defendant Queen of Sheba. Defendant Marcos is named for purposes of Plaintiff's involuntary and forced labor claims.[1] Defendant Marcos' residence is unknown.

### III. JURISDICTION AND VENUE

5. This Court has original jurisdiction pursuant to 18 U.S.C. § 1595(a) and 28 U.S.C. § 1331, and supplemental jurisdiction over state claims under 28 U.S.C. § 1367.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b). Defendants have offices within the district and the events that have given rise to Plaintiff's injuries occurred within this district.

### IV. FACTS

#### A. BACKGROUND

7. In 2006, Plaintiff emigrated from Ethiopia to the United States.

8. Plaintiff entered the U.S. legally through the U.S. Department of State's Diversity Immigrant Visa Program. Plaintiff became a legal permanent resident, then United States citizen.

---

[1] A civil labor trafficking claim may be pursued against a perpetrator "or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter [the Trafficking Victims Protection Act]." 18 U.S.C. § 1595(a). Such a person violates the Act by, among other things, obtaining involuntary labor through abuse or threatened abuse of the legal process. 18 U.S.C. § 1589(a)(3). The term "abuse or threatened abuse of law or legal process" means "the use or threatened use of a law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action." *Id.* at (c)(1).

9. In 2014, Plaintiff moved to Fort Wayne, Indiana to enroll as a student in a local university nursing program. Plaintiff had no family and few acquaintances in the city at the time.

10. After arriving in Fort Wayne, Plaintiff had to quickly find work in order to support herself. It was also necessary for Plaintiff to find work to provide remittances to her family still living in rural Ethiopia. Her mother and siblings still in Ethiopia do not have a regular source of income. Defendants were aware of these facts.

### B. RECRUITMENT OF INVOLUNTARY LABOR

11. In early September 2014, Plaintiff began work as a cleaner, cook, and laborer for Defendants at an Ethiopian-style restaurant in Fort Wayne marketed under the name Queen of Sheba.

12. Upon hiring Plaintiff, Defendants knew Plaintiff was an Ethiopian native, an individual with limited English language speaking proficiency, an individual with a limited support network in the area, and an individual who needed to work to help support herself and family.

13. Upon hiring Plaintiff, Defendants also knew Plaintiff had a limited understanding of the U.S. legal system and its labor laws. Defendants knew that if they failed to provide her information about these laws and systems, or provided her misinformation, Plaintiff would not have enough knowledge of these laws and systems to be able to assert her rights.

14. Upon hiring Plaintiff, Defendants also knew that they intended to exert pressure on Plaintiff through abuse of the legal process by providing her misinformation or withholding information from her about relevant laws and legal systems so that Plaintiff would not have knowledge of them, all in an effort to exert pressure on Plaintiff to refrain from taking

3

action to assert her legal rights.

15. Accordingly, upon hiring Plaintiff, Defendants did not provide her proper or adequate labor and wage information, and never did so, and knew and intentionally so set about obtaining forced and involuntary labor from Plaintiff.[2]

## C. SCOPE OF INVOLUNTARY LABOR

16. From September 2014 through January 2015, Plaintiff regularly worked eighty (80) or more hours per week for Defendants.

17. Plaintiff was ordered to clean and cook during these hours, generally from morning before the restaurant opened until late in the evening after it had closed, and not permitted to eat or rest while at work.

18. Despite her long hours, Plaintiff was never paid statutorily required minimum or overtime wages.

19. Defendants offered Plaintiff only partial, sporadic payments, generally in the form of cash or personal check. Defendants, further, would occasionally make these partial payments not to her directly but, rather, have them submitted as rent payments to the landlord of the rental unit where Defendant Marcos had arranged for Plaintiff to stay.

20. During this time of involuntary labor, Plaintiff was paid less than even half of the minimum wages she was statutorily owed.

21. During this time of involuntary labor, Plaintiff asked if she was being paid lawful wages.

---

[2] Abuse of the legal process includes providing misinformation about the law or hiding information about the law in order to prevent an individual from using the legal process or even knowing of its existence. *United States v. Calimlim*, 538 F.3d 706, 712-13 (7th Cir. 2008) (the guilt of a victim's labor traffickers who "portray[ed] themselves as innocent employers who simply bargained for mutual advantage" partly lay "in what they did not tell her.").

Defendants intentionally misinformed her that she was.

22. However, Defendants knew that they were obtaining labor involuntarily from Plaintiff by providing her misinformation and hiding relevant information from her about the law and legal processes. Defendants also knew they were causing Plaintiff financial harm and, in order to retain her as an employee, relying about upon implicit and serious threats of financial harm.[3]

23. Because of Plaintiff's low wages and long working hours, she was often was left ill and hungry.

### D. INJURY AND RETALIATION DURING INVOLUNTARY LABOR

24. On or about November 28, 2014, Plaintiff, while working within the scope of her employment for Defendants at the Queen of Sheba restaurant, suffered severe burn injuries when hot oil was spilled directly on her face and arms.

25. After being burned, Plaintiff complained to Defendant Marcos of her injuries and requested to go to the hospital.

26. Defendant Marcos, however, notified Plaintiff that Plaintiff could not go to the hospital. Rather, Defendant Marcos told Plaintiff if that she was to leave work, she must got only to a pharmacy retail chain store.

27. At the retail chain store, Plaintiff encountered a doctor. This doctor was alarmed by the severity of Plaintiff's visible injuries and told her to go to a hospital.

---

[3] *Panwar v. Access Therapies, Inc.*, 975 F.Supp.2d 948, 958 (S.D. Ind. 2013) ("[C]ourts have held that threatened financial harm may constitute a type of 'serious harm' for purposes of the TVPA . . . . "[For example], plaintiffs had sufficiently alleged that defendants threatened the abuse of legal process, and that the potential financial harm faced by plaintiffs was sufficiently serious such that their labor was forced as contemplated by § 1589(a).").

28. Over objections of Defendant Marcos, Plaintiff went to the hospital, where she was treated in its burn unit.

29. At no time did Defendants offer Plaintiff assistance through or access to worker's compensation benefits.

30. When Plaintiff returned to work, Defendant Marcos chastised Plaintiff for going to the hospital. Further, Defendant Marcos told her that at work Plaintiff was not allowed to treat her burns with the ointment she had been prescribed by the hospital.

31. After Plaintiff was burned, Defendant Marcos actively kept Plaintiff hidden from customers so they could not see the severe burns Plaintiff had suffered while working involuntarily for Defendants.[4]

### E. RETALIATORY DISCHARGE AND FAILURE TO PAY WAGES

32. Due to working conditions under which she suffered, Plaintiff was eventually no longer able to continue at Queen of Sheba and so was constructively discharged from employment in January 2015.

33. At the time of discharge until present, Defendants have not made any outstanding minimum wage or overtime payments to Plaintiff.

34. At the time of discharge until present, Defendants have not offered, afforded, or provided Plaintiff any access to worker's compensation benefits.

35. On February 16, 2016, the Office of the Attorney General for the State of Indiana

---

[4] *Calimlim*, 538 F.3d at 714 (Defendants "must have enjoyed some profit, at least on the margin, or else they would not have gone to the trouble of having a [worker] whom they kept hidden, often through extraordinary measures, from all outsiders. They argue that the value of her labor was offset by 1) the price of her wages, room, and board, and 2) the risk of harboring her, and that the values all balance out. Even accepting this implausible argument . . . her labor came at a significantly lower price than a comparable American [worker]. This is enough of a pecuniary motive by itself to prove financial gain . . .").

authorized Plaintiff's counsel to pursue Plaintiff's wage claims. Documentation of this authorization is attached and incorporated into this Complaint as Exhibit A.

## V. CLAIMS FOR RELIEF

### CLAIM I
### FORCED AND INVOLUNTARY LABOR
Trafficking Victims Protection Act, 18 U.S.C §§ 1589, 1595
(Defendants Queen of Sheba and Marcos)

36. Based on the facts above, Defendants knowingly and intentionally obtained Plaintiff's forced, involuntary, and coerced labor through abuse of the legal process in violation of the federal Trafficking Victims Protection Act of 2000, and subsequent reauthorizing acts.

37. As a result of this wrongdoing, Plaintiff suffered financial harm and loss, physical pain and injury, mental anguish and emotional distress, loss of liberty, and other injury and damages.

### CLAIM II
### WAGE PAYMENT VIOLATIONS
Indiana Minimum Wage Law, Ind. Code § 22-2-2-9, Indiana Statutory Wage Law,
Ind. Code § 22-2-5-2, and Federal Fair Labor Standards Act, 29 U.S.C. § 216(b)
(Defendant Queen of Sheba)

38. Based on the facts above, Defendant Queen of Sheba intentionally and in bad faith failed to make timely minimum wage and overtime wage payments to Plaintiff in violation of state and federal law.

39. As a result of this wrongdoing, Plaintiff suffered financial harm and loss, and other injury and damages.

### CLAIM III
### WORKER'S COMPENSATION RETALIATION
*Frampton v. Central Indiana Gas Co.*, 297 N.E.2d 425 (Ind. 1973*)*,
*Tony v. Elkhart Cnty.*, 918 N.E.2d 363 (Ind. Ct. App. 2009)
(Defendant Queen of Sheba)

40. Based on the facts above, Defendant Queen of Sheba intentionally failed to afford Plaintiff

worker's compensation benefits, created an intolerable work environment after Plaintiff sought such benefits, and constructively discharged her for seeking these benefits.

41. As a result of this wrongdoing, Plaintiff suffered financial loss, physical pain and suffering, physical injury, mental anguish and emotional distress, medical expenses, and other injury and damages.

## VI. PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests the Court grant judgment for compensatory damages against Defendant Queen of Sheba for all claims, punitive damages against Defendant Marcos for labor trafficking claims,[5] liquidated damages against Defendant Queen of Sheba for wage claims, for costs and attorneys' fees pursuant to 18 U.S.C. § 1595 and statutory wage claim law, and for all other just and proper relief.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues alleged pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

---

[5] *Francisco v. Susano*, 525 Fed. Appx. 828, 835 (10th Cir. 2013) (punitive damages available under 18 U.S.C. § 1595); *Ditullio v. Boehm*, 662 F.3d 1091, 1096 (9th Cir. 2011) (punitive damages available because the Trafficking Victims Protection Act creates a claim that "sounds in tort").

Respectfully,

**CHRISTOPHER C. MYERS & ASSOCIATES**

/s/ David W. Frank
David W. Frank, #31615-02
Ilene M. Smith, #22818-02
809 South Calhoun Street, Suite 400
Fort Wayne, IN 46802-2307
Telephone: (260) 424-0600
Facsimile: (260) 424-0712
E-mail: dfrank@myers-law.com
Counsel for Plaintiff

DF
S:\Adem, Alewya v. Queen of Sheba LLC and Saba Marcos -DF\Pleadings\Complaint.docx

**STATE OF INDIANA**
**OFFICE OF THE ATTORNEY GENERAL**
INDIANA GOVERNMENT CENTER SOUTH, FIFTH FLOOR
302 W. WASHINGTON STREET • INDIANAPOLIS, IN 46204-2770
www.AttorneyGeneral.IN.gov

**GREG ZOELLER**
INDIANA ATTORNEY GENERAL

TELEPHONE: 317.232.6201
FAX: 317.232.7979

February 16, 2016

David W. Frank
Christopher C. Myers & Associates
809 S. Calhoun St., Ste 400
Fort Wayne, IN 46802

    RE: Alewya Adem v. Queen Of Sheba Llc
        Wage Claim #16-13163
        Amount: $21,123 ($7,041 x3 due to bad faith) + reasonable attorney fees andc

Dear Mr. David W. Frank:

I am writing in response to your request that the Office of the Attorney General provide you with authorization to pursue the claimant's wage claims in the above-referenced case. This Office has no objection to your pursuing such claims and, to the extent that it is authorized to refer the case to your office for action, hereby does so. No finding is made by the Office of the Attorney General as to any issues that might be construed as having been raised by this complaint.

You have represented that you are an attorney admitted to the practice of law in Indiana and in good standing. You have further represented that you have uncovered no conflicts of interest in the above-referenced matter. Thus, we are authorizing you pursuant to Indiana Code § 22-2-9-4 to represent the individual plaintiff in this action.

We ask only that you pursue the action diligently and report to us on the results. Feel free to contact me at (317) 232-6231 if you have any questions.

Sincerely,

*[signature]*

Betsy M. Isenberg
Deputy Attorney General

EXHIBIT A

cc: Rick J. Ruble, General Counsel, IDOL
cc: Patricia Orloff Erdmann, Chief Counsel for Litigation, OAG

FEB 2   2016